IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| KEVIN GOWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:19-cv-00890-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF OPINION**

## I.    Introduction

The plaintiff, Kevin Gowens ("Gowens"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Gowens timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Gowens was 36 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a general education diploma. (Tr. at 35, 321, 344.) His past work experience includes working as a "ridesman" in a land survey

business. (Tr. at 344.) Gowens claims he became disabled on January 1, 2014, from ankylosing spondylitis, scoliosis, a cracked tailbone, and heart issues. (Tr. at 321, 343.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Gowens meets the insured status requirements of the Social Security Act through June 30, 2017. (Tr. at 30.) He further determined that Gowens has not engaged in SGA since his alleged disability onset date of January 1, 2014. (*Id.*) According to the ALJ, the plaintiff's "multi-level degenerative disc disease, ankylosing spondylitis, and discitis at the L3-L-4 level" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 31.) The ALJ determined that Gowens has the RFC "to perform the full range of sedentary work as defined in 20 CFR § 404.1567(a) and 416.967(a)." (Tr. at 32.)

According to the ALJ, Gowens has no past relevant work. (Tr. at 34.) The ALJ also determined that Gowens is a "younger individual age 18-44," at 32 years old, on the alleged disability onset date. (*Id.*) In addition, the ALJ determined that the "transferability of job skills is not an issue because the claimant does not have past

relevant work." (*Id.*) Next, the ALJ determined that there are a significant number of jobs in the national economy that Gowens is capable of performing. (*Id.*) The ALJ concluded his findings by stating that Gowens is not disabled as defined in the Social Security Act at any time from January 1, 2014, through August 27, 2018, the date of the ALJ's decision. (Tr. at 35.)

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers

to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.    Discussion

Plaintiff claims that the ALJ's decision should be reversed and remanded for several reasons: (A) the ALJ improperly evaluated his subjective complaints of pain; (B) the ALJ failed to mention the opinion of Dr. David Wilson, an examining

consultative psychologist, and improperly gave little weight to the opinion of Dr. Robert Estock, a non- examining medical expert; (C) the ALJ failed to properly consider Plaintiff's obesity pursuant to Social Security Ruling ("SSR") 02-1p; and (D) the Appeals Council refused to review evidence dated after the ALJ's decision without considering if the new evidence was chronologically relevant, and denied review without support of substantial evidence.

## A.    Evaluation of Plaintiff's Subjective Complaints

Gowens's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social

Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of the plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a plaintiff's symptoms, (3) the plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the plaintiff takes to relieve symptoms, and (8) any conflicts between a plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit a plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding

supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Gowens stated that he stopped working in May 2015 because he experiences "shooting pain" in his chest when he attempts to work. (Tr. at 163, 343.) Gowens emphasized that his lower back and legs occasionally "go out" when he is "working and stuff" due to his "scoliosis and . . . three bulged discs in [his] spine." (Tr. at 167.) Further, Gowens stated that he cannot stay standing for longer than "six, seven minutes" before his "back locks up" and his legs and toes "go numb." (Tr. at 171.) Gowens also commented on his mental health, explaining that he has "bad nerves sometimes." (Tr. at 176.)

First, the ALJ found that the Gowens's alleged chest pain and anxiety are not medically determinable impairments ("MDI"). (Tr. at 31.) Gowens visited the emergency room *once* for endocarditis, an infection causing inflammation of the heart valve, on May 9, 2016. (Tr. at 787.) Further, Gowens has never experienced a myocardial infraction. (Tr. at 1311.) The record does not reveal any other cardiovascular issues or abnormal findings. (Tr. at 31.) Although Gowens experienced anxiety in connection to a medical overdose when he visited the

emergency room for endocarditis (tr. at 491-92), Gowens regularly received normal mental health results during examinations, including good concentration, alert cognition, cooperative attitude, and intact memory. (Tr. at 210, 429, 455, 463, 492, 583, 624, 645, 797, 801, 805, 835, 1189, 1207, 1272, 1311.)

Instead, the ALJ found that Gowens suffers from MDIs related to his back. (Tr. at 30.) Applying the applicable Eleventh Circuit pain standard, the ALJ found that Gowens's MDIs from his back could reasonably cause his alleged symptoms, satisfying the first part of the pain standard. (Tr. at 32.) However, the ALJ also found that Gowens's statements concerning the intensity, persistence, and limiting effects of his back pain are not entirely credible. (*Id.*) The ALJ emphasized that Gowens's statements conflict with record evidence, particularly his failure to seek ongoing medical treatment. (Tr. at 32-34.) Substantial evidence supports the ALJ's conclusion in this case.

The ALJ emphasized that Gowens never sought ongoing treatment for his alleged back pain; instead, he visited the emergency room on several occasions, often for an acute exacerbation of a common illness. (Tr. at 33.) On the first occasion, Plaintiff presented to Cherokee Medical Center for a sore throat. (Tr. at 512-13.) Dr. William Hawley, the examining physician, diagnosed Gowens with acute pharyngitis on January 10, 2014. (Tr. at 510, 516.) Dr. Hawley instructed the plaintiff to take

prescription medications, along with ibuprofen or acetaminophen for pain, and discharged him. (Tr. at 513, 516.) According to the medical record, the plaintiff demonstrated normal behavior, reported his ability to perform all activities of daily living without assistance, and rated his pain as "3 on a one-to-ten scale." (Tr. at 513.)

On another occasion, Gowens presented to Cherokee Medical Center for blurry vision. (Tr. at 491.) Dr. Tamara Hughes, the examining physician, diagnosed the plaintiff with acute anxiety on April 29, 2014, but she also noted that the plaintiff did not report back pain or an altered mental status. (Tr. at 491-92). Dr. Hughes also noted that Gowens tested positive for methamphetamine use. (Tr. at 492.) Dr. Hughes did not suggest any ongoing treatment, but she did recommend that Gowens seek help for his persistent drug usage. (Tr. at 497.) On January 1, 2015, Plaintiff returned to Cherokee Medical Center with symptoms of the flu. (Tr. at 479.) Dr. Hughes found that Gowens had acute bronchitis and influenza. (Tr. at 480.) On December 20, 2015, he was treated again by Dr. Hughes at Cherokee Medical Center for a laceration to his thigh. (Tr. at 471.) Four days later, on December 24, 2015, Gowens returned to Cherokee Medical Center with complaints of dizziness. (Tr. at 463.) Dr. Hughes found that the plaintiff had generalized weakness and anemia, but that he again tested positive for methamphetamine use. (Tr. at 464-65.) Dr. Hughes

prescribed a multivitamin with iron and recommend the plaintiff immediately stop using methamphetamine. (*Id.*)

On May 9, 2016, Gowens presented to Floyd Medical Center for endocarditis and MRSA bacteremia. (Tr. at 787.) During his visit, the hospital administered an MRI. (Tr. at 765, 767.) When reviewing the MRI, Dr. James Moseley identified mild disc bulging, ligamentous hypertrophy at the L3-4 level, and a mild diffuse bulge at the L4-5 level. (Tr. at 765.) On May 19, 2016, Dr. Cyrus Parsa noted some element of discitis on the MRI, but Dr. Parsa did not advise surgical intervention. (Tr. at 788, 790.)

On July 19, 2016, Gowens went to the emergency room at Jacksonville Regional Medical Center, claiming lower back pain. (Tr. at 1164.) Dr. Thaddeus Coleman, a radiologist, identified some degenerative changes at the L3-4 level with some endplate erosion. (Tr. at 1155.) On July 20, 2016, Gowens was transferred to Floyd Medical Center for further care and evaluation. (Tr. at 1176, 1183.) Dr. Matthew McClain performed another MRI of the lumbar spine, and the findings showed discitis and osteomyelitis at the L3-4 level. (Tr. at 1233.) On July 22, 2016, Dr. Zachary Martin Jr. performed a successful CT-guided aspiration and biopsy of the L3-L4 disc space. (Tr. at 1229.) Dr. John Hostetler confirmed that the biopsy revealed cultures that tested positive for MRSA. (Tr. at 1216, 1222.) He suggested

that surgical intervention was unnecessary but recommended that Gowens remain on antibiotics for six weeks. (*Id.*) On September 2, 2016, Gowens was discharged to his home in stable condition. (Tr. at 1263.)

Then, on October 6, 2016, Gowens returned to Floyd Medical Center after experiencing chest pain, hip pain, and lower back pain. (Tr. at 1309.) Dr. Steven Ziemer diagnosed Gowens with chronic back pain, but Dr. Ziemer ruled out the possibility of myocardial infraction. (Tr. at 1311.) Dr. Ziemer also found that Gowens had no acute cardiopulmonary process. (Tr. at 1313.) Dr. Zachary Martin Jr. reviewed Gowens's X-rays that were conducted on October 6, 2016, and Dr. Martin did not report any additional findings regarding the lumbar spine issues, other than discitis-osteomyelitis at the L3-L4 level, which had been previously noted. (Tr. at 1324.) He also reported no acute hip injury and indicated that the cardiomediastinal silhouette was within normal limits. (Tr. at 1327.) Gowens was discharged to his home on the same day. (Tr. at 1315.)

Ultimately, the ALJ found that Gowens's inclination to visit the emergency room, rather than seek ongoing, aggressive treatment, indicates that his back pain is not as severe as he claims. (Tr. at 33.) Furthermore, the ALJ noted that Gowens never tried to ameliorate his pain with "hot/cold therapy, physical therapy, exercises, or consistent use of over the counter medicine." (*Id.*) Moreover, the ALJ

determined that the medical results from these visits "show some positive findings" but "no significant findings that would result in the type of disabling pain alleged by the claimant." (*Id.*) Ultimately, none of the limitations described by any of these medical providers exceed the limitations provided by the ALJ in the RFC. (Tr. at 32-33.) The ALJ's decision to discount Gowens's alleged inability to work due to back pain is supported by substantial evidence, particularly Gowens's failure to seek ongoing treatment. (Tr. at 32-34.)

Gowens argues that the ALJ failed to analyze whether his medical conditions could reasonably cause the alleged pain. But, the ALJ acknowledged that Gowen's back condition could reasonably cause his symptoms. (Tr. at 32.) Instead, the ALJ emphasized that Gowens's statements concerning the "intensity, persistence, and limiting effects" of his symptoms were inconsistent with record evidence, specifically his failure to seek ongoing treatment. (Tr. at 33.)

Here, the ALJ did not disregard Gowens's pain, but instead determined that Gowens's pain does not prevent him from working based on record evidence. (Tr. at 32.) The ALJ's evaluation of Gowens is supported by citation to specific evidence that articulates explicit reasons for discounting Gowens's testimony. *See Dyer*, 395 F.3d at 1212; *Wilson*, 284 F.3d at 1226.

### B.    Weight to Medical Opinions

Gowens next alleges that the ALJ improperly rejected the opinion of Dr. Estock, a non-examining medical expert, and failed to mention the opinion of Dr. Wilson, an examining consultative psychologist.

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of the plaintiff's impairments depends, among other things, upon the examining and treating relationship the medical source had with the plaintiff, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing

treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . .." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). As such, the opinions of one-time examiners are not entitled to any special deference or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of a doctor who conducted a single examination and who was not a treating doctor). Importantly, however, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

### 1.    Dr. Estock

Dr. Estock reviewed Plaintiff's medical records and issued a disability determination on September 9, 2016, noting that Gowens suffers from substance addiction disorders, anxiety disorders, and affective disorders. (Tr. at 226-27.) Dr. Estock is a reviewing physician rather than a treating physician. (Tr. at 212-13.) Therefore, his opinion is not entitled to deference like that of a treating physician. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ granted Dr. Estock's opinion "minimal weight." (Tr. at 33-34.)

Substantial evidence supports the ALJ's decision to afford minimal weight to Dr. Estock's opinion. The ALJ determined that Dr. Estock's opinion was inconsistent with Gowens's lack of formal diagnosis or ongoing treatment for mental

health issues. (Tr. at 33-34.) Notably, Gowens has never been formally diagnosed by a mental health specialist, received any on-going mental health treatment, complained about persistent mental health symptoms, or received any abnormal findings. (Tr. at 204-33, 425-1335.) Second, the ALJ noted that Dr. Estock's findings were inconsistent with prior physicians' examinations, which describe Gowens's mental health as "normal," aside from psychiatric diagnoses related to methamphetamine and tobacco use. (Tr. at 34, 464-65, 492, 1272-73, 1278, 1310-11.) In fact, on many occasions, Gowens's examinations showed that he was alert, well-oriented, and cooperative. (Tr. at 210, 429, 455, 463, 492, 583, 624, 645, 797, 801, 805, 835, 1189, 1207, 1272, 1311.) Gowens never exhibited suicidal ideation, disruptive behavior, or verbalized intent to harm himself or others. (Tr. at 1278.)

Gowens argues that the ALJ substituted his opinion for that of a physician by discounting Dr. Estock's opinion. However, in assessing Gowens's RFC, the ALJ did not make a medical finding; instead, the ALJ evaluated Dr. Estock's opinion evidence as part of his RFC assessment. *See* 20 C.F.R. §§ 404.1512(b), 404.1513(b), 404.1520b, 404.1527, 404.1545(a)(3), 416.912(b), 416.913(b), (c), 416.920(b), 416.927, 416.945(a)(3), 416.946(c).

The ALJ's decision to assign minimal weight to Dr. Estock's opinion is supported by substantial evidence. Dr. Estock's opinion is inconsistent with the

record medical evidence as well as Gowens's lack of a formal diagnosis by a mental health specialist or on-going mental health treatment. (Tr. at 33-34.)

### 2.   Dr. Wilson

Dr. Wilson performed a psychological consultative examination on January 21, 2011, noting that the plaintiff suffered from depression. (Tr. at 135.) Gowens initially argued that the ALJ erred by failing to mention Dr. Wilson's examination. However, the relevant period for Gowens's appeal is the period between his alleged onset date, January 1, 2014, and the date of the ALJ's most recent decision, August 27, 2018. (Tr. at 35, 205, 321, 358.) Because Dr. Wilson's examination occurred three years prior to the alleged onset date, the ALJ was not responsible for evaluating that opinion. (Tr. at 135.) *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (explaining that the plaintiff must show disability before the date last insured for DIB cases and must show disability between the application date and date of the ALJ's decision for SSI cases). Gowens concedes in his reply brief that Dr. Wilson's examination predated his alleged onset date. Accordingly, substantial evidence supports the ALJ's decision not to evaluate Dr. Wilson's 2011 opinion because the examination did not take place within the relevant period, beginning on January 1, 2014.

### C.   ALJ's Consideration of Plaintiff's Obesity

Gowens next contends that the ALJ should have considered his obesity under SSR 02-1p. As an initial matter, Gowens never claimed obesity as an impairment at the administrative level, either in his application, disability reports, or at his hearing. (Tr. at 161-80, 300-09, 343.) Accordingly, the ALJ did not have to consider Gowens's obesity when making his decision. *See Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 778 (11th Cir. 2016) (holding claimant's argument that the ALJ did not take into account any evidence regarding certain conditions was without merit because claimant "did not assert those complaints were disabling, and he did not include them in his disability application or his amendment to the application"); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (holding ALJ had no duty to consider claimant's chronic fatigue syndrome diagnosis where claimant was represented at hearing before ALJ and did not allege she was disabled due to CFS either when she filed her claim or at her hearing) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (noting claimant did not raise mental health issues as a basis for disability, and "this failure alone could dispose of his claim, as it has been persuasively held that an 'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for

disability'") (quoting *Pena*, 76 F.3d at 909). Accordingly, Plaintiff's argument about obesity cannot succeed.

The ALJ may consider a plaintiff's impairments in combination. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (the ALJ specifically stated that "the medical evidence establishes that [the plaintiff] had [several injuries] which constitute a severe impairment, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."); *see also Jones v. Dept. of Health and Human Services,* 941 F.2d 1529, 1533 (11th Cir.1991).

Although obesity is not a listed impairment, the ALJ is required to consider obesity when assessing a claimant's overall medical condition. SSR 02–1p provides that obesity shall be considered when "determining if (1) a claimant has a medically determinable impairment, (2) the impairment is severe, (3) the impairment meets or equals the requirements of a listed impairment, and (4) the impairment prevents a claimant 'from doing past relevant work and other work that exists in significant numbers in the national economy.'" *Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (quoting SSR 02–1p). SSR 02–1p further provides that "a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing" and requires the ALJ to assess how the

claimant's ability to perform routine movement and necessary physical activity is affected by his obesity. SSR 02–1p.

Obesity combined with other impairments may disable an individual, even if the other impairments are not severe enough to do so on their own. *See* SSR 02–1p. Obesity can exacerbate both mental and physical conditions. (*Id.*) "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir .2003); *see also Doughty,* 245 F.3d at 1278 (11th Cir.2001); 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). Moreover, it is the plaintiff's burden to provide a complete medical record; if he fails to do so, the ALJ will decide based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e); 404.1516.

Even if the ALJ erred in failing to consider the plaintiff's obesity, Gowens failed to prove that his obesity affects his ability to work. The plaintiff bears the burden of proving that the impairment prevents him from engaging in SGA. *See Moore*, 405 F.3d at  1213 n.6; *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 778 (11th Cir. 2016) (holding claimant's argument that the ALJ did not take into account any evidence regarding certain conditions was without merit because claimant "did

not assert those complaints were disabling, and he did not include them in his disability application or his amendment to the application"); *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (holding ALJ had no duty to consider claimant's chronic fatigue syndrome (CFS) diagnosis where claimant was represented at hearing before ALJ and did not allege she was disabled due to CFS either when she filed her claim or at her hearing) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *Street v. Barnhart*, 133 F. App'x 621, 627(11th Cir. 2005) (noting claimant did not raise mental health issues as a basis for disability, and "this failure alone could dispose of his claim, as it has been persuasively held that an 'administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (quoting *Pena*, 76 F.3d at 909); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (holding that claimant's failure to raise disability claim based on obesity "waived [the claim] from being raised on appeal"). Gowens never proffered medical evidence supporting his claim that obesity complicates his ability to work, failing to meet his burden. Further, Gowens's RFC is limited to sedentary work, which requires minimal standing and walking. (Tr. at 32.)

## D.    Appeals Council Review

With few exceptions, a claimant may present new evidence at each stage of the administrative process, including to the Appeals Council. *See* 20 C.F.R. §§ 404.900(b), 416.1400(b). The Appeals Council has discretion to deny review of the ALJ's decision. *See* 20 C.F.R. §§ 404.967, 416.1467. The version of 20 C.F.R. § 404.970 that applies to this case states that the Appeals Council will consider additional evidence if Plaintiff had good cause for not informing the Commissioner about or submitting the evidence as described in 20 C.F.R. § 404.935 and there is "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a); *see also* 81 FR 90987 (explaining the new rules are effective January 17, 2017).

Further, the Commissioner's internal policy provides guidance on the meaning of "material" and chronological relevance and what it means for the Appeals Council to determine there is not a reasonable probability that the additional evidence would change the outcome of the decision. Hearings, Appeals, and Litigation Law Manual (HALLEX), § I-3-3-6, 1993 WL 643129 (May 1, 2017). The HALLEX explains that additional evidence is "material" if it is "relevant, i.e., involves or is directly related to issues adjudicated by the ALJ." *Id*. It explains that additional evidence "relates to the period on or before the date of the hearing

decision" (i.e., is chronologically relevant) "if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id.* The HALLEX also explains that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id.*

The ALJ issued his decision on August 27, 2018. (Tr. at 35.) Gowens subsequently submitted four new pieces of evidence to the Appeals Council: (1) medical records from Wills Valley Family Medicine ("WVFM") from September 4, 2018, to November 15, 2018; (2) a physical capacities form as well as a mental health statement, both completed by Dr. Francis Koe on September 24, 2018; (3) medical records from Quality of Life Health Services ("QLHS") from November 19, 2014, to July 27, 2018; and (4) medical records from Floyd Medical Center ("FMC") from July 10, 2018, to July 17, 2018. (Tr. at 2, 17-24, 40-65, 121-33.) The Appeals Council denied Gowens's request for review of the ALJ's decision. (Tr. at 1-2.)

First, the Appeals Council determined that the evidence from WVFM from September to November 2018 and Dr. Koe from September 2018 "does not relate to the period at issue," and therefore, this evidence "does not affect the decision about whether [Gowens] was disabled beginning on or before August 27, 2018." (Tr.

at 2.) The Appeals Council also found that the evidence from QLHS and FMC "does not show a reasonable probability that it would change the outcome of the decision." (*Id.*)

Gowens argues that the Appeals Council must provide a more detailed explanation of its evaluation of the new evidence. However, Eleventh Circuit precedent demonstrates that the Appeals Council was not required to provide a more detailed explanation of its reason for denying review. *See Mitchell*, 771 F.3d at 784; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018).

Gowens does not explain why he believes any of the evidence looked at by the Appeals Council is chronologically relevant to the ALJ's decision. He merely argues that the Appeals Council erred under *Washington v. Social Security Administration*, 806 F.3d 1317 (11th Cir. 2015), in which the Eleventh Circuit stated that "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant." However, this case is distinguishable. In *Washington*, the plaintiff submitted a psychologist's evaluation and opinion about the plaintiff's mental limitation prepared seven months after the ALJ's decision to the Appeals Council. *Washington,* 806 F.3d at 1319-20. The court in *Washington* concluded that the medical evidence was chronologically relevant for the following reasons: (1) the plaintiff described his mental symptoms during the relevant period to the

psychologist, (2) the psychologist reviewed the plaintiff's mental health treatment records from that period, and (3) there was no evidence of the plaintiff's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case"). The Eleventh Circuit has recently declined to extend its holding beyond *Washington* in several cases. *See*, *e.g., Hargress*, 883 F.3d at 1309-10 (distinguishing *Washington* because "nothing in these new medical records indicates the doctors considered [the plaintiff's] past medical records or that the information in them relates to the period at issue").

The medical evidence from WVFM does not meet the specific circumstances described in *Washington*. In contrast to *Washington*, the records from Wills contain no medical opinion about Plaintiff's limitations and, instead, only assessed diagnoses, provided physical therapy, or interpreted test results based on Plaintiff's conditions as they existed after the relevant period (Tr. at 20-24). There is no indication that these healthcare providers, including Dr. Koe, reviewed and relied on Plaintiff's past medical records when rendering treatment or interpreting test results related to Plaintiff's conditions after August 27, 2018 (Tr. at 20-24). Indeed, one note directly indicates that the providers at Willis did not have previous records related to ankylosing spondylitis (Tr. at 23).

Also, the records show Plaintiff had worsening conditions of ankylosing spondylitis, obesity, and depression. (Tr. at 20-24). Indeed, when Plaintiff first presented to Willis, he was in "so much pain he [was] crying throughout the interview" and later had back spasms, something that did not happen during the relevant period (Tr. at 23). At an examination in July 2017, right before the end of the relevant period, Plaintiff even denied back pain. (Tr. at 130.) The first record from Willis listed his weight as 327 (tr. at 24), up twenty-seven pounds from the last available record related to the relevant period in July 2018. (Tr. at 130). Plaintiff also directly indicated his mental condition (depression) was worsening. (Tr. at 20). At an examination in July 2017, right before the end of the relevant period, Plaintiff had normal psychiatric findings. (Tr. at 131.) Plaintiff's case simply does not contain similar circumstances to *Washington*, and the holding in *Washington* was explicitly limited to the circumstances in that case. *See Washington*, 806 F.3d at 1323. Thus, *Washington* is inapplicable, and the Appeals Council properly determined the evidence was not chronologically relevant even though providers at Willis treated conditions that were also present during the relevant period. *See Hand v. Soc. Sec. Admin., Comm'r*, 786 F. App'x 220, 228 (11th Cir. 2019) ("Unlike the new evidence in *Washington*, Hand identifies 'nothing in these new medical records [which] indicates the doctors considered [Hand's] past medical records or that the

information in them relates to the period at issue.'") (citing *Hargress*, 883 F.3d at 1309-10); *Hargress*, 883 F.3d at 1309-10 ("Here, however, nothing in these new medical records indicates the doctors considered Hargress's past medical records or that information in them relates to the period at issue, which materially distinguishes this case from *Washington*."); *Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016) (holding additional evidence was not chronologically relevant when there was no indication the physician reviewed or had access to past medical records and the evidence demonstrated worsening of claimant's condition after the ALJ's decision and explaining claimant received the same diagnoses from the relevant period but not a "recurrent" diagnosis, which itself is not enough to show chronological relevance); see also HALLEX § I-3-3-6, 1993 WL 643129 (explaining the Appeals Council will not consider evidence that is not related to the period at issue, including evidence that shows a worsening of the condition or onset of a new condition after the date of the ALJ decision).

With respect to Dr. Koe's physical capacities evaluation and mental capacities evaluation forms, the Appeals Council also properly determined they were not chronologically relevant. (Tr. at 2). In *Washington*, the Eleventh Circuit found a physician's opinion dated after the relevant period was chronologically relevant when the physician relied on Washington's reports that his symptoms had been

present his entire life, the physician reviewed evidence from the relevant period before rendering his opinion, and there was no assertion or evidence that claimant's cognitive skills declined after the ALJ's decision. *Washington*, 806 F.3d at 1322. Here, Dr. Koe's wholly unsupported opinions are unlike the physician's opinion in *Washington*. (Tr. at 8). First, there is no indication that Dr. Koe relied on reports of symptoms from the relevant period and that his symptoms had not changed after the relevant period. Plaintiff first saw Dr. Koe at Willis on September 6, 2018 (i.e., after the relevant period), so she had no first-hand knowledge of Plaintiff's conditions during the relevant period. (Tr. at 24). As discussed above, the evidence shows Plaintiff had worsening ankylosing spondylitis and a worsening mental issue during the time Dr. Koe saw Plaintiff versus the relevant period. (Tr. at 20-24). Thus, it appears Dr. Koe based her opinion on worsening physical and mental issues. Second, there is no indication Dr. Koe reviewed or relied on medical records from the relevant period when rendering her opinions. (Tr. at 17-18). Indeed, Dr. Koe did not cite any medical records in the opinions. (Tr. at 17-8). She indicated it was unknown whether limitations related back to January 1, 2014 (i.e., Plaintiff's alleged onset date). (Tr. at 17-18).

With respect to Plaintiff's physical issues, Dr. Koe indicated she did not have access to records from the relevant period related to ankylosing spondylitis—the

condition she cited as the basis for limitations. (Tr. at 17). With respect to Plaintiff's mental issues, Dr. Koe indicated a lack of familiarity with Plaintiff, so she did not opine about his attention, concentration, and/or pace abilities. (Tr. at 18). For these reasons, Dr. Koe's opinions were not chronologically relevant. *See Ring v. Soc. Sec. Admin, Comm'r*, 728 F. App'x 966, 969 (11th Cir. 2018) (holding in part that an opinion was not chronologically relevant when it appeared "to relate to the worsening of a condition or the onset of a new condition after the ALJ's decision") (citation omitted); *Hargress*, 883 F.3d at 1310 ("Nevertheless, nothing in the form or any other documents indicated that Dr. Teschner evaluated Hargress's past medical records when forming that opinion. Dr. Teschner began treating Hargress in January 2015 and thus did not treat Hargress in 2013. Therefore, the form did not relate to the period on or before the date of the ALJ's hearing."); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 864 (11th Cir. 2017) ("Dr. Busch's opinions fail to show directly or indirectly that he based his opinion on medical records from the time period before the ALJ's decision, making *Washington* inapplicable here. Dr. Busch's opinions were not chronologically relevant; we thus hold that the Appeals Council properly refused to consider them."). Given the foregoing, Plaintiff failed to show the Appeals Council committed legal error by not considering this evidence because it was not chronologically relevant.

As for the new evidence from QLHS, the Appeals Council declared that the evidence does not create a "reasonable probability" that the ALJ would change his decision. (Tr. at 2.) Plaintiff fails to provide any explanation of how the evidence he submitted to the Appeals Council would have changed the outcome of the ALJ's decision. In any event, the additional evidence from QLHS consists of two records. First, on November 19, 2014, the plaintiff presented to the clinic for anxiety, blisters, and numbness in his right hand. (Tr. at 121.) The evaluating physician, Dr. Larry Scarborough, recorded mostly normal findings, aside from lower back pain and a rash on the plaintiff's mouth and neck. (Tr. at 125-27.) The record also shows that Gowens stated his pain was "0/10" on a pain scale. (Tr. at 126.) Second, on July 27, 2018, Gowens presented to the clinic for a wound on his left foot. (Tr. at 128.) The record revealed that Gowens denied any back pain but experienced some anxiety. (Tr. at 130.) Gowens's physical and psychiatric examination findings were normal aside from his wounded foot, tenderness in his shin, and some testicular tenderness. (Tr. at 131.) Dr. Scarborough reported weight gain; he encouraged Gowens to diet and exercise. (Tr. at 130, 132.)

This evidence, when considered with the whole record, does not create a reasonably probability that the ALJ would change his decision. The record examined by the ALJ demonstrated a history of ankylosing spondylitis and mild disc bulging in

the lower lumbar spine. (Tr. at 765, 782-83, 849, 853-55.) The record before the ALJ also indicated that Gowens, at times, experienced back pain and movement limitations due to the pain. (Tr. at 311, 783, 1311.) However, on a consistent basis, the record also revealed that Gowens received normal physical examination findings. (Tr. at 425, 429, 486, 583, 797, 801, 803, 805, 810, 813, 816, 818, 820, 823, 826, 829, 832, 835, 838, 1184, 1189, 1311). Specifically, the record demonstrates that Gowens experienced no acute distress, no back tenderness, no issues concerning extremities, and walked normally. (Tr. at 455, 463, 559, 604, 624, 797, 801, 803, 810, 820, 823, 826 835, 1184, 1189, 1207, 1273, 1311). Plaintiff also received normal neurological findings, lacking any focal neurological deficit. (Tr. at 794, 797, 810, 826, 829, 832, 838, 856, 1225, 1189.)

The plaintiff's mental health findings were also normal, aside from a couple of occasions. On December 24, 2015, Dr. Tamara Hughes, the examining physician, determined that Gowens had psychiatric abnormalities. (Tr. at 463.) However, he was also intoxicated and used methamphetamines at the time of this visit. (Tr. at 463, 465). On May 19, 2016, Dr. Cyrus Parsa, a consultative physician, found Gowens to be "definitely somnolent," but also noted that he was "oriented to all spheres." (Tr. at 789.) Moreover, Gowens never sought consistent mental health treatment, and the record showed consistently normal results regarding his mental

health findings. (Tr. at 429, 455, 463, 471, 492, 583, 624, 641, 645, 797, 801, 803, 805, 810, 813, 816, 818, 820, 823, 826, 832, 835, 838, 895, 897, 1184, 1272.) The record before the ALJ demonstrated that Gowens was routinely found to be alert, oriented, well concentrated, and to have normal speech. (Tr. at 429, 455, 463, 492, 559, 583, 604, 624, 645, 797, 801, 805, 810, 835, 1207, 1272, 1311.) He was also often found to have cooperative behavior. (Tr. at 486, 583, 797, 801, 826, 838, 895, 1272, 1311).

Itis unlikely that the findings in the records from QLHS would change the ALJ's decision, especially considering the information that was already considered in the record before him. Additionally, Gowens failed to provide an explanation of how such evidence would change the ALJ's decision.

## IV.    Conclusion

Upon review of the administrative record, after considering Gowens's arguments, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on September 1, 2020.

_____

L. Scott Coogler
United States District Judge

160704